# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE DODSON,<br><br>   Plaintiff,<br><br> v.<br><br>ANDREW M. SAUL,[1]<br>Commissioner of Social Security,<br><br>   Defendant. | Case No.: 1:18-cv-1172 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF MARLENE DODSON, AND AGAINST DEFENDANT ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY |

   Marlene Dodson asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision denying benefits. Because the ALJ erred in evaluating Plaintiff's statements regarding the severity of her symptoms and rejecting the opinions of a treating and examining physician, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

   In June 2014, Plaintiff filed her application for benefits, alleging disability beginning on February 5, 2014. (Doc. 9-3 at 16) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 9-4) Plaintiff requested a hearing and

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner. (*See* Doc. 1) Andrew M. Saul, who is now the Commissioner, has been automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

1

testified before an ALJ on January 9, 2018. (*See* Doc. 9-3 at 16, 36) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on August 1, 2017. (*Id.* at 16-28) Plaintiff filed a request for review of the decision with the Appeals Council, which denied her request on June 28, 2018. (*Id.* at 2-5) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 5, 2014. (Doc. 9-3 at 18) Second, the ALJ found Plaintiff's severe impairments included: "history of seizure disorder, headaches, [and] degenerative joint disease." (*Id.*) The ALJ noted Plaintiff also alleged depression and anxiety, but found these impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.* at 21)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 10-3 at 22-25) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally balance, but cannot climb ladders, ropes or scaffolds. She must avoid concentrated exposure to hazards.

(*Id.* at 21) With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing past relevant work as a data entry clerk, administrative clerk and claims clerk." (*Id.* at 27) In the alternative, at step five the ALJ found "other jobs existing in the national economy that she is also able to perform." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from February 5, 2014, through the date of the decision. (*Id.* at 28)

///

3

# **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ erred in evaluating her mental impairments at step two and opinions related to the impact of the impairments. (Doc. 18 at 29-35) She also asserts the ALJ erred in evaluating the medical record and formulating the residual functional capacity. (*Id.* at 26-29) Finally, Plaintiff contends the ALJ erred evaluating her credibility by failing to address a positive work history. (*Id.* at 36-37) The Commissioner argues the ALJ's "decision is supported by substantial evidence, free from reversible error, and should be affirmed." (*See* Doc. 21 at 29)

## A. Analysis of Plaintiff's Subjective Statements

Plaintiff testified that she had a seizure for the first time in January 2014. (Doc. 9-3 at 39) She reported that she "tried to go back [to work] for a short period of time," but was unable to do so "with the memory loss, the stress, [and] the anxiety." (*Id.* at 41) Plaintiff reported an MRI revealed "a spot on the brain that is actually what triggers [her] seizures," and surgery was a possibility. (*Id.* at 45) However, Plaintiff said it was "not worth – the fear of it… because it may or may not work..." (*Id.*)

She said her seizures were under control by the hearing, but she remained unable to work due to daily headaches, migraines, memory loss, and anxiety. (Doc. 9-3 at 41) Plaintiff stated her neurologist informed her that headaches and memory loss were side effects from her prescriptions. (*Id.* at 43) She testified that she had headaches on a daily basis, which she described as "a dull roar." (*Id.* at 44) Plaintiff also said that once a month, she would "see spots out to the side" and felt "mini seizures that would go into migraines." (*Id.* at 45, 48) Plaintiff stated she took migraine medication that "knocks [her] out," and she would "be out for a couple of days with it." (*Id.* at 45)

Plaintiff said she was not seeing a psychiatrist, therapist, or other mental health professional. (Doc. 9-3 at 43) Plaintiff stated no one recommended that she see a therapist, and when the ALJ observed that a treatment note from June 2014 recommended counseling, Plaintiff stated she "honestly [didn't] remember." (*Id.* at 44) She reported she was never hospitalized for mental issues. (*Id.*)

She testified she had issues with concentration and stress, and that her doctor indicated stress could cause seizures. (Doc. 9-3 at 46-47) She reported that her doctor opined Plaintiff should stay away from any type of stress. (*Id.*) Plaintiff said she could "tell a big difference" between when she was stressed, because a headache would come with stress. (*Id.* at 47)

### 1. Standards for reviewing a claimant's statements

Plaintiff contends the ALJ's evaluation of her symptoms was flawed because "the ALJ failed to consider numerous factors as required by the regulations when assessing whether a claimant's self-described limitations are consistent with and supported by the record." (Doc. 18 at 36) For example, Plaintiff asserts the ALJ erred by failing to consider "her exemplary work history." (*Id.*) Further, she asserts the analysis of her subjective symptoms impacted the ALJ's analysis related to the severity of her mental impairments and headaches, incorporating limitations related to her headaches in the residual functional capacity. (*Id.*)

In evaluating a claimant's statements, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling[2] 16-3p, 2017 WL 5180304 (2017).

---

[2] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5

| | |
|---|---|
| 1 | An ALJ may consider additional factors to assess a claimant's statements including, for |
| 2 | example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between |
| 3 | testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately |
| 4 | explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from |
| 5 | physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair* |
| 6 | *v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th |
| 7 | Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a |
| 8 | claimant's testimony and conduct, and a claimant's daily activities). |

2. The ALJ's analysis of Plaintiff's statements

The ALJ determined first that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 9-3 at 22) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record...." (*Id.*) In making this finding, the ALJ provided a chronological summary of the medical record from January 2014 to November 2016, and then stated:

> The evidence is consistent with the residual functional capacity determination herein. Her seizures are controlled. While she reports headaches, she has also deferred medication due to symptoms that are not consistent with one suffering from the degree of pain alleged. On June 16, 2015, Dr. Chen noted that the claimant did not want to take additional medication for headaches, as she could "tolerate current level of severity" (Exhibit 10F, page 37). On December 16, 2015, she said she did not like Imitrex for her headaches because it made her feel like she was under anesthesia. Her headaches are not severe enough to warrant emergency room visits, or more frequent than six month follow up visits with Dr. Chen. She "rarely" takes the prescription headache medication due to "somnolence" or feeling tired, yet did not apparently deem them severe enough to see the doctor in the interim six months.

(*Id.* at 25; *see also id.* at 22-25)

        *a.    Summary of the medical record*

As an initial matter, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ offered boilerplate findings related to whether Plaintiff's medically determinable

impairments could cause the symptoms alleged and that her statements were "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 9-3 at 22) The ALJ then followed the assessment with a chronological summary of the record, including objective findings and Plaintiff's subjective reports to her physicians. (*Id.* at 22-25) However, the ALJ did not link Plaintiff's testimony to this summary of the record, such as by identifying any inconsistent statements between her reports to physicians and her testimony at the hearing. Previously, this Court determined that unless the ALJ links the claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record [this is] not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

A district court may not review an ALJ's summary of the record to identify inconsistencies between a claimant's testimony and the record. In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

Likewise, here, the ALJ offered little more than a summary of the medical evidence, and he did not identify the statements from Plaintiff that the ALJ believed conflicted with this record. Although Defendant identifies inconsistencies between Plaintiff's testimony and the records summarized by the ALJ (*see* Doc. 21 at 26-28), these inconsistencies cannot support the adverse credibility determination because the Court is "constrained to *review* the reasons the *ALJ* asserts." *Brown-Hunter*, 806 F.3d at 494 (emphasis in original) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Because the ALJ failed to link his credibility findings from the summary of the medical record to Plaintiff's testimony and reject limitations to which she testified—including difficulties with concentration and an inability to handle stress— the ALJ made an error the Court is unable to cure. *See Brown-Hunter*, 806 F. 3d at 494. In addition, given the ALJ's failure to "specifically identify what testimony is credible and what evidence undermines the claimant's complaints," the summary of the

medical record fails to support the ALJ's decision to reject Plaintiff's subjective complaints. *See Greger v. Barnhart,* 464 F.3d 968, 972 (9th Cir. 2006) *Brown-Hunter*, 806 F.3d at 494.

     b.  *Treatment sought and received*

In assessing a claimant's statements regarding the severity of her symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c)(iv). Further, the Ninth Circuit determined that an "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ's consideration of the claimant's failure to seek treatment for a three or four month period was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).

The ALJ found that Plaintiff's seizures were well-controlled with her medication. (Doc. 9-3 at 25) The ALJ noted that "[w]hile [Plaintiff] reports headaches, she also deferred medication due to symptoms that are not consistent with one suffering from the degree of pain alleged." (Doc. 9-3 at 25) Specifically, the ALJ observed Plaintiff "did not want to take additional medication for headaches" and reported she did not want to take Imitrex "because it made her feel like she was under anesthesia." (*Id.*) The ALJ also noted that Plaintiff did not visit the emergency room for her headaches or have "more frequent than six month follow up visits" with her physician. (*Id.*)

Plaintiff contends the ALJ's analysis related to her treatment for headaches is flawed because "failure to follow treatment is not the end of the inquiry, it is the beginning: having determined a failure to follow treatment, an ALJ may only deny benefits on this basis if (1) the treatment can restore the claimant's ability to work, and 2) there are no 'acceptable reasons' for the failure to follow treatment." (Doc. 18 at 23, emphasis omitted) (citing 20 C.F.R. 404.1530). Plaintiff observes the ALJ did not make any finding that her treatment would restore her ability to work, and asserts the record includes acceptable reasons for Plaintiff declining Imitrex. (*Id.* at 22-23) According to Plaintiff, the ALJ's analysis "is a misreading of the record," because her physician concluded Plaintiff "did not tolerate Imitrex." (*Id.* at 22, citing AR 553 [Doc. 9-13 at 44]) Plaintiff also argues that "the record documents far more significant effects of this medication." (*Id.* at 22-23, citing AR 551, 555 [Doc. 9-13 at 42, 47])

8

Significantly, the ALJ failed to acknowledge that when Plaintiff declined additional medication, Dr. Chen indicated Plaintiff was currently "on a high dose of 2" medications—Aptiom and Lamictal— and wanted "to continue with her current regimen." (Doc. 9-13 at 40) Despite this, Dr. Chen prescribed Imitrex for Plaintiff to take as needed for her migraines. (*Id.* at 41) Plaintiff tried the Imitrex and reported it did not help. (*Id.* at 42) In addition, Plaintiff stated that when she took the medication, she "felt she was 'under anesthesia." (*Id.*) Dr. Chen determined Plaintiff "[d]id not tolerate Imitrex." (*Id.* at 44)

As Plaintiff argues, the ALJ's failure to address the circumstances around Plaintiff's declining to take additional medication or acknowledge that Plaintiff still tried Imitrex after the doctor prescribed it. The ALJ also fails to acknowledge the physician's opinion that Plaintiff did not tolerate the Imitrex. Because the ALJ did not address the proffered reasons for Plaintiff declining to take Imitrex for his headaches, this does not support the ALJ's decision to give less weight to Plaintiff's statements regarding the severity of her headaches. *See Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). On the other hand, the fact that Plaintiff did not seek more frequent treatment suggests that her headaches were as severe as alleged. Thus, the treatment sought and received by Plaintiff offers some support for the ALJ's evaluation of Plaintiff's statements regarding the severity of her headaches.

### c. *Consideration of Plaintiff's work history*

Plaintiff asserts the ALJ also erred in evaluating her subjective statements because the ALJ did not consider all factors identified by the Regulations, such as her work history. (Doc. 18 at 36) She contends that she "had an excellent work history prior to her alleged onset of disability, with covered earnings in 133 out of a possible 140 work quarters between 1980 through 2014, a total of 33 ¼ years." (*Id.*, citing AR 161-62 [Doc. 9-6 at 11-12])

"An ALJ is required to consider work history when assessing credibility." *Matthews v. Berryhill*, 2017 WL 3383118 at *12 (E.D. Cal. Aug. 7, 2017) (citing 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 96-7p, 1996 SSR LEXIS 4). However, an ALJ's findings related to a claimant's subjective statements will be upheld, even where all possible factors are not considered, if the ALJ's findings are "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."

*Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Crane v. Shalala,* 76 F.3d 251, 254 (9th Cir. 1995) ("Although the findings upon which this determination was based were not as extensive as they might have been, they sufficed to show that the ALJ did not arbitrarily reject [the claimant's] testimony."). Thus, the Court must determine whether the error was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006) (finding error to be harmless when it was inconsequential to the ultimate nondisability determination).

The ALJ addressed only Plaintiff's testimony regarding her headaches and did not address her statements regarding the extent of her side effects, Plaintiff's reported difficulty with concentration, or her need to avoid stressful situations. (*See* Doc. 9-3 at 25) Because the ALJ rejected these statements without comment, the Court is unable to find the rejection was on permissible grounds. Thus, the Court is unable to find the additional failure to consider Plaintiff's positive work history was a harmless error. *See Moisa*, 367 F.3d at 885; *Stout,* 454 F.3d at 1055.

**B.  Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577,

579 (9th Cir. 1984).

Plaintiff asserts the ALJ erred in rejecting the opinions of Drs. Chen and Izzi—her treating physician and an examining physician—both in evaluating the severity of Plaintiff's mental impairments at step two and identifying limitations in the residual functional capacity. (*See generally* Doc. 18 at 19-35) Because their opinions were contradicted by Drs. Garcia, Morris, and Bhatia (*see* Doc. 9-3 at 20 and 26), the ALJ was required to identify specific and legitimate reasons to reject the limitations identified by Drs. Chen and Izzi.

1. Opinions of Dr. Chen

Plaintiff's treating physician, Dr. Linda Chen, noted Plaintiff had a seizure in January 2014. (Doc. 9-10 at 9) Plaintiff's seizure included postictal confusion, amnesia, myalgias, and caused a tongue laceration. (*Id.*) Dr. Chen continued to treat Plaintiff through 2015, during which time she completed three statements related to Plaintiff's limitations and abilities. (*See* Doc. 9-10 at 22-24; Doc. 9-11 at 70-72; Doc. 9-12 at 2-4) The ALJ addressed these statements as follows:

> On March 17, 2014[3], Dr. Chen prepared a medical source statement in which she indicated that the claimant had been diagnosed with complex, partial epilepsy with a good prognosis (Exhibit 4F, page 1). Symptoms consisted of "visual seizures, dizziness, debilitating anxiety, still with seizures, once per month." She could stand, walk and sit less than two hours due to dizziness. She must shift positions at will. She has no limitations related to reaching, handling or finger, and she has no postural limitations. She is incapable of low stress jobs and would miss more than four days of work each month.
>
> On June 24, 2014, at the claimant's request, Dr. Chen completed a form for her disability claim requested by her attorney. Dr. Chen wrote, "She essentially has been disabled because of the recurrent seizures and also significant anxiety and fear of having seizures again. She has become very tearful[;] I recommended counseling. We can also discuss an SSRI in the future. For now she is using lorazepam for anxiety attacks. Paperwork for disability claim filled in per (patient's) request" (Exhibit 3F, page 9).
>
> Dr. Chen completed a medical source statement on December 16, 2015 (Exhibit 9F). She indicated that the claimant had been diagnosed with epilepsy, chronic headaches and anxiety, and that prognosis was "good in terms of epilepsy, guarded in terms of headaches and anxiety.["] Symptoms consisted of "daily headaches punctuated with severe headaches, anxiety, fatigue, poor short term memory." Dr. Chen checked boxes indicating that the claimant can occasionally stand and walk and frequently sit. She must shift positions at will. She can occasionally lift or carry less than ten pounds and rarely lift or carry ten pounds. She can rarely twist, stoop, crouch/squat or climb stairs and never climb ladders. She has significant limitations in reaching, handling or

---

[3] Although the ALJ repeatedly indicated this statement was completed on March 17, 2014, the statement was dated June 24, 2014. (Doc. 9-10 at 24) At that time, Dr. Chen indicated the earliest date of the description and limitations in the questionnaire applied was March 17, 2014. (*Id.*)

11

fingering due to dizziness. Her symptoms would constantly interfere with attention and concentration. She is incapable of even low stress jobs, as there was "persistence of symptoms since 1/2014, memory difficulties, fatigue, pain.["] She would miss more than four days of work each month.

(Doc. 9-3 at 25- 26)

The ALJ indicated he gave "reduced weight to the various opinions of Dr. Chen" for the following reasons:

> Dr. Chen's various medical source statements contain conflicting statements as to limitations and the reasons for such limitations. Her March 17, 2014 [statement] indicates she cannot sit for more than two hours, with no explanation, yet the December 16, 2015 statement indicates she can sit frequently. The March 17, 2014 statement found no limitations with regard to reaching, handling and fingering, yet the December 16, 2015 statement found significant limitations in reaching, handling and fingering "due to dizziness." There is no adequate explanation as to why the claimant cannot lift more than ten pounds. These limitations, contained in check-the-box forms, are not consistent with the evidence and cast doubt on the rest of the doctor's opinions, which initially found disability due to seizures, later transitioning due headaches and anxiety once the seizures were under control. Yet the doctor only mentioned counseling once, and the claimant would defer[] medication for headaches and just "lives with it" rather than feel tired with Imitrex.

(Doc. 9-3 at 26) Plaintiff contends this rationale for rejecting the opinion of her neurologist "was legally insufficient." (Doc. 18 at 26)

   *a.*   *Internal inconsistencies*

The Ninth Circuit determined an opinion may be rejected where there are inconsistencies within a physician's reports. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). However, it is an error to read a treating physician's notes "selective[ly]" rather than "in full and in context." *Holohan v. Massanari*, 246 F.3d 1195, 1204-05 (9th Cir. 2001). The Ninth Circuit determined also that an ALJ cannot properly reject a treating physician's opinion as being "inconsistent" with his or her treatment notes if the "inconsistency" is only, for instance, that the claimant showed improvement during treatment. *Id.*

In *Holohan*, the ALJ rejected the treating physician's opinion that the claimant suffered from "marked" impairments with respect to "performance of any work activity due to anxiety/panic attacks and poor concentration." *Holohan*, 246 F.3d at 1204-05. The ALJ rejected the opinion as "totally inconsistent with [the physician's] own treatment notes and records…" *Id*. The ALJ stated the treatment notes "indicate[d] control of panic attacks" with medication; a "great improvement" in the claimant's

12

condition; and the physician's finding that the panic attacks increased with inactivity, such that she was happy when she joined the YMCA. *Id.* Upon appeal, the Ninth Circuit found the ALJ erred in rejecting the treating physician's opinion on these grounds. *Id.* The Court found the ALJ was too "selective" in his reliance on the treating physician's notes, and "exaggerate[d]" the contents. *Id.* at 1205. The Court concluded the physician's notes "must be read in context of the overall diagnostic picture he draws." *Id; see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) (citing *Holohan* and holding treatment notes reflecting a "improvement" did not undermine the physician's conclusions and diagnosis).

It appears the ALJ failed to consider changes in Plaintiff's symptoms and reported side effects from medication. Indeed, Dr. Chen identified additional diagnoses and symptoms in her statements, which the ALJ failed to acknowledge when finding the statements included inconsistent limitations. For example, in the June 2014 statement, Dr. Chen indicated only that Plaintiff was diagnosed with "epilepsy, complex partial," for which she had a good prognosis. (Doc. 9-10 at 22) Dr. Chen noted that at that time, Plaintiff's symptoms included seizures, dizziness, and anxiety. (*Id.*) However, in December 2015, Dr. Chen noted Plaintiff's diagnoses included "epilepsy, chronic headaches, [and] anxiety." (Doc. 9-12 at 2) The symptoms noted included "daily headaches, punctuated with severe headaches, anxiety, fatigue, [and] poor short term memory." (*Id.*) The ALJ failed to acknowledge the change in diagnoses and impairments could result in the changes in the limitations identified and instead rejected the opinions, in part, for the inconsistencies.

Furthermore, the ALJ failed to acknowledge *consistencies* within the opinions of Dr. Chen related to Plaintiff's ability to handle stress and complete a full month at work. For example, Dr. Chen repeatedly indicated that Plaintiff was incapable of low stress jobs. (Doc. 9-10 at 24; Doc. 9-11 at 72; Doc. 9-12) Also, in each opinion, Dr. Chen indicated a belief that Plaintiff was likely to miss more than four days per month. (*Id.*) In April 2015, Dr. Chen noted her opinion that Plaintiff could not handle low stress positions due to Plaintiff's anxiety and vertigo. (Doc. 9-11 at 72) Finally, in December 2015, Dr. Chen indicated that anxiety was a trigger for Plaintiff's symptoms. (Doc. 9-12 at 2)

Given the ALJ's failure to consider the medical source statements in the context—including

13

identified changes in Plaintiff's diagnoses and symptoms—the inconsistencies identified do not support the ALJ's decision to reject the limitations identified by Dr. Chen.

### b. *Inconsistency with the record*

An ALJ may reject limitations "unsupported by the record as a whole" and inconsistent with the treatment a claimant received. *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010). However, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ concluded the limitations identified by Dr. Chen were "not consistent with the evidence." (Doc. 9-3 at 26) However, the ALJ failed to identify any objective evidence or clinical findings that contradicted limitations identified by Dr. Chen and offered only his conclusion that the limitations were not consistent with other evidence. This is not sufficient to carry the burden in evaluating the evidence or addressing a conflict in the record. *See Cotton*, 799 F.3d at 1408; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Consequently, the unidentified inconsistencies with the record do not support the ALJ's evaluation of the limitations from Dr. Chen.

### c. *Treatment from Dr. Chen*

The ALJ appears to reject the statements from Dr. Chen, in part, on the grounds that the treatment she provided was inconsistent with the limitations identified, because the ALJ observed: "the doctor only mentioned counseling once, and the claimant would defer[] medication for headaches and just 'lives with it' rather than feel tired with Imitrex." (Doc. 9-3 at 26) However, as discussed above, the ALJ failed to acknowledge the extent of Plaintiff's side effects with Imitrex. The ALJ also does not address the treatments discussed by Dr. Chen with Plaintiff, which included surgical intervention, when Plaintiff decided to continue with her current regimen of medications, which included two "high dose"

medications for epilepsy. (*See* Doc. 9-13 at 40) Also, the ALJ fails to explain how the treatment provided is inconsistent with the physical and mental limitations identified by Dr. Chen. Thus, this factor does not support the ALJ's decision to reject the limitations. *See Cotton*, 799 F.2d at 1408.

### d. Conclusion

The ALJ failed meet his burden to "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting limitations identified by Dr. Chen. *See Lester*, 81 F.3d at 831. His error in evaluating the limitations both impacted the findings at step two related to the severity of Plaintiff's mental impairments, given the conclusions from Dr. Chen addressing Plaintiff's ability to handle stress, anxiety, and effect of her headaches. Likewise, this error impacted the residual functional capacity at step four, where an ALJ must which must include "all of [a claimant's] medically determinable impairments," whether severe or not. 20 C.F.R. § 404.1545(a)(2).

### 2. Opinion of Dr. Izzi[4]

Plaintiff contends the ALJ erred in evaluating the opinions of Dr. Roger Izzi, who performed a consultative psychiatric evaluation in October 2014. (Doc. 18 at 31-35) Dr. Izzi observed that Plaintiff "appeared appropriately dressed and groomed," and her "level of consciousness was alert, and responsive." (Doc. 9-10 at 74) Plaintiff reported she had anxiety, would not go anywhere by herself, and she forgot things. (*Id.* at 73) She said she stayed home and did not belong to any social organizations, but family and friends would visit her. (*Id.* at 73) Dr. Izzi believed Plaintiff's affect seemed dysphoric, and Plaintiff reported feeling "[a]nxiety and fear." (*Id.* at 74) Plaintiff was "able to immediately recall three words without obvious difficulty" and "recall two of the three words" after a delay. (*Id.*) Dr. Izzi noted Plaintiff "had no difficulty spelling the word 'world' forward and backward. (*Id.*) Dr. Izzi diagnosed Plaintiff with "Unspecified Anxiety Disorder," and opined Plaintiff's "mood disorder [would] fluctuate as she perceives changes in her physical condition. (*Id.* at 75) Dr. Izzi concluded:

> Clinical interview indicates that the claimant is not having any difficulty caring for basic hygiene. The present evaluation suggests that the claimant does appear capable of performing a simple and repetitive type task on a consistent basis over an eight-hour period. Her ability to get along with peers or be supervised in work-like setting would be moderately limited by her mood disorder. The claimant's mood disorder can be

---

[4] The ALJ erroneously referred to Dr. Izzi as Dr. Roger in the opinion. (*See* Doc. 9-3 at 19-20)

> expected to fluctuate. Any significant fluctuation of mood would limit the claimant's ability to perform a complex task on a consistent basis over an eight-hour period. On a purely psychological basis, the claimant appears capable of responding to usual work session situations regarding attendance and safety issues. On a purely psychological basis, the claimant appears capable of dealing with changes in a routine work setting.

(*Id.* at 75)

The ALJ reviewed these findings and indicated he gave the opinion of Dr. Izzi "reduced weight." (Doc. 9-3 at 20) The ALJ found:

> The findings with regard to moderate limitations in getting along with others and limitations in regard to performing complex tasks are based on the subjective report of the claimant and not supported by mental health treatment notes. There is little to suggest she has trouble getting along with others, as she has friends, is in a coffee group, and attends church weekly. On several instances, the claimant denied mental symptoms, and she had no apparent difficulty testifying at the hearing and recalling events. The lack of specialized psychiatric treatment, as well as her activities, leads me to conclude that this opinion is too restrictive.

(*Id.*) Thus, the ALJ rejected the limitations on the grounds that they were based upon Plaintiff's subjective reports, her level of activity, and the treatment Plaintiff received. The Ninth Circuit has determined an ALJ may reject a physician's opinion for each of the reasons identified by the ALJ, where the reason is supported by evidence in the record.

          *a.    Reliance upon Plaintiff's subjective complaints*

An ALJ may reject an opinion predicated upon "a claimant's self-reports that have been properly discounted as not credible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Fair*, 885 F.2d at 605 (finding the ALJ identified a specific, legitimate reason for disregarding a physician's opinion "because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted.") For example, in *Tommassetti*, the Court reviewed the physician's records, and found "they largely reflect[ed] Tommasetti's reports of pain, with little independent analysis or diagnosis." *Id.*, 533 F.3d at 1041. Because the ALJ found the claimant's subjective complaints lacked credibility, the Court concluded that "the ALJ's adverse credibility determination supports the limited rejection of [the physician's] opinion because it was primarily based on Tommasetti's subjective comments concerning his condition." *Id.* In contrast, as discussed above, the ALJ failed to properly reject Plaintiff's subjective complaints related to her concentration and anxiety. Thus, this factor does not support the ALJ's decision to give reduced weight to the opinion of Dr. Izzi.

### b. *Plaintiff's level of activity*

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649, 652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the claimants subjective complaints, and limitations identified by the doctor conflicted with the claimants daily activities).

The ALJ found the conclusions of Dr. Izzi that Plaintiff's "ability to get along with peers or be supervised in work-like setting would be moderately limited by her mood disorder" to be inconsistent with Plaintiff's activities, because there was "little to suggest she has trouble getting along with others, as she has friends, is in a coffee group, and attends church weekly." (Doc. 9-3 at 20) The ALJ also observed that Plaintiff was able to testify at the hearing and recall events. (*Id.*) Notably, however, Dr. Izzi believed Plaintiff's mood disorder should be expected to fluctuate (Doc. 9-10 at 75), which indicates that her abilities would fluctuate as well.

Moreover, the ALJ fails to explain how Plaintiff's ability to have her friends visit, go to coffee, and attend church on a weekly basis is inconsistent with the findings related to Plaintiff's ability to get along with others—outside of her friends and family— on a *daily* basis. The ALJ also fails to make any finding that Plaintiff engaged in the identified activities daily, or that she could do so on a sustained basis during the workday. Consequently, the record does not support the ALJ's conclusion that Plaintiff's level of activity is inconsistent with the conclusions of Dr. Izzi, and this factor does not support the ALJ's decision to give reduced weight to the opinion.

### c. *Plaintiff's report of mental symptoms*

The ALJ reports, without citing to any evidence, that Plaintiff "denied mental symptoms" on several instances. (Doc. 9-3 at 20) However, the record reflects that Plaintiff repeatedly reported anxiety. For example, in April 2014, Dr. Chen noted that Plaintiff had "significant anxiety which is severe." (Doc. 9-10 at 14) The following month, Dr. Chen noted that Plaintiff did not want to be alone due to her seizures, and indicated Plaintiff had "developed separation anxiety since the development of epilepsy." (*Id.* at 16) Dr. Chen prescribed lorazepam to treat Plaintiff's anxiety. (*Id.*) However, in

June 2014, Dr. Chen again observed that Plaintiff was suffering from "significant anxiety and fear of having seizures again," and had become "very tearful." (*Id.* at 18) In addition, Plaintiff reported "ongoing difficulty with short-term memory difficulty," such as forgetting to pick up things at the store and taking a medication both at night and in the morning that should have been taken once. (Doc. 9-11 at 15-16) Dr. Chen noted the memory problems were "multifactoral" and could be a medication side effect, drowsiness, "or subtle partial seizures." (*Id.* at 16) Plaintiff also continued to report short-term memory problems in 2015. (*See, e.g.*, Doc. 9-13 at 42) Thus, the record does not support the ALJ's assertion that Plaintiff denied mental symptoms.

### d. *Treatment received*

The ALJ also gave less weight to the opinion of Dr. Izzi due to Plaintiff's "lack of specialized psychiatric treatment." (Doc. 9-3 at 20) Although Plaintiff's anxiety was treated with medication, she did not receive counseling or psychotherapy, and the record supports the ALJ's conclusion that Plaintiff was not given specialized psychiatric treatment. However, the ALJ fails to explain how the lack of treatment undermines Dr. Izzi's objective findings and observations, such as Plaintiff's inability to recall all three words after a delay. (*See* Doc. 9-10 at 74) Consequently, this factor offers limited support to the ALJ's decision to give less weight to the limitations identified by Dr. Izzi.

### e. *Conclusion*

The ALJ erred in evaluating several factors related to the opinion of Dr. Izzi, and his flawed evaluation resulted in errors in evaluating the severity of Plaintiff's mental impairments at step two, as the mental limitations were not properly rejected.

### C. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

18

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if [her] testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834. Importantly, courts retain flexibility in crediting testimony as true, and may remand for further proceedings to address a claimant's statements regarding the severity of her symptoms. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints …"). Because the findings of the ALJ are insufficient to determine whether Plaintiff's statements regarding the severity of her symptoms should be credited as true, the matter should be remanded for the ALJ to re-evaluate the evidence.

Further, the ALJ failed to resolve conflicts in the record related to the severity of Plaintiff's mental impairments and physical limitations. The failure to identify specific and legitimate reasons, supported by substantial evidence, for rejecting limitations identified by Drs. Chen and Izzi was not "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Accordingly, upon remand the ALJ should also re-evaluate the medical evidence related to the severity of Plaintiff's mental impairments and her residual functional capacity. *See Moisa*, 367 F.3d at 886.

**CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ failed to apply the proper legal standards related to evaluating Plaintiff's statements and the limitations identified by Drs. Chen and Izzi. Thus, the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

///

Accordingly, the Court **ORDERS**:

1. Defendant's motion for summary judgment (Doc. 21) is **DENIED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Marlene Dodson, and against Defendant Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 25, 2020**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE